UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PAUL PLOTNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:22-cv-2202 |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER & OPINION

This matter is before the Court on motion by Defendant Board of Trustees of the University of Illinois for summary judgment. (Doc. 25). Plaintiff Paul Plotner has responded (doc. 28); Defendant has replied (doc. 29). This matter is therefore ripe for review. For the following reasons, Defendant's Motion is granted.

### BACKGROUND

Plaintiff initiated this lawsuit on September 22, 2022, against his former employer, the University of Illinois, alleging that the actions of his supervisor, Chad Garrett, created a hostile work environment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Doc. 1). Beginning in 2001, Plaintiff performed part-time, seasonal work for Defendant in the Facilities and Services Grounds Department at the Urbana-Champaign campus. (Doc. 25 at 3). He became a full-time employee in 2017 and was in that role until his resignation on October 19, 2021. (Doc. 25 at 3, 9). Plaintiff's job duties included landscaping maintenance like mowing, trimming, and planting, as well as leaf and snow removal.

(Doc. 25 at 3–4). At all times relevant to this matter, Plaintiff was supervised by sub-foreperson, Chad Garrett, and was married to Xiao Hua Plotner, who also performed seasonal work for the Grounds Department from 2016 to 2018. (Doc. 25 at 4).

Plaintiff recounts several incidents during his employment where he believes Garrett harassed him. To start, after becoming Plaintiff's direct supervisor, Garrett assigned Plaintiff to work in a "satellite shed" with one other Grounds Department employee. (Doc. 25 at 4). Garrett was responsible for monitoring progress and supervising the employees within his "zone" on campus. (Doc. 25 at 5). Plaintiff regularly saw Garrett during his workday—because employees did not have to "clock-out" if they stayed in their assigned zone for breaks, Plaintiff would eat lunch within his zone. (Doc. 25 at 5-6). He would frequently see Garrett driving or walking within his zone, or "popping in" to the satellite shed while Plaintiff was on a break. (Doc. 25 at 6).

During his workday, Plaintiff was responsible for operating a riding mower, including performing minor maintenance. (Doc. 25 at 5). The riding mower was stored in a fenced area accessible by key to all Grounds Department employees. (Doc. 25 at 5). In June 2020, Plaintiff discovered that one of two oil caps on his riding mower was missing when he arrived at work; after informing Garrett of the missing cap, Plaintiff was provided with a spare. (Doc. 25 at 5). Plaintiff was not disciplined for the missing cap; however, he believed Garrett removed it to sabotage Plaintiff's work performance. (Doc. 25 at 5). The next year, Garrett documented concerns he had with Plaintiff's recent behavior, and after bringing his concerns to his supervisor

(foreperson Isaac Williams), Garrett spoke with Plaintiff on April 21, 2021. (Doc. 25 at 6). The conversation began with Plaintiff asking Garrett about why he was parked in a certain lot, why he walked over, why Plaintiff had seen him while on a break, and what he was doing earlier related to another employee. (Doc. 25 at 6). Garrett raised his concerns about Plaintiff's behavior and offered him information on the University's Faculty Staff Assistance and Well-Being Services. (Doc. 25 at 7). The term "paranoid schizophrenia" was mentioned during this conversation; although Garrett contends that he mentioned it in relation to his own family experiences as support, while Plaintiff puts forth that Garrett called him a "paranoid schizophrenic." (Docs. 25 at 7, 28 at 11).

Some time after this encounter, Plaintiff had lunch with his aunt, Judy Plotner, within Garrett's supervisory zone. (Doc. 25 at 7). Garrett drove by, pulled into the parking lot where Plaintiff was, and parked nearby for approximately five minutes. (Doc. 25 at 7). After Garrett left, and Plaintiff and his aunt finished lunch, Judy's car was followed by a University of Illinois police vehicle for several blocks. (Doc. 25 at 7). The police vehicle did not use its sirens, stop Judy's car, or issue any citations; Plaintiff believes Garrett called the police on his aunt. (Doc. 25 at 7).[1] Plaintiff also believes that he was sabotaged by Garrett when he mowed an area that Garrett had recently sprayed with lawn treatment—the grass died where Plaintiff

---

[1] It is, however, undisputed that Garrett has no special relationship to the University of Illinois Police Department, and that he only called the police one time in his role as a sub-foreperson, when a rock from a lawn mower broke the window on his truck. (Doc. 25 at 8).

rode his mower over the recent treatment—and when Plaintiff asked Garrett how to operate a tractor for snow removal, to which Garrett responded that he "can grab a shovel." (Docs. 25 at 8, 28 at 11). Plaintiff believes some of Garrett's responses to his questions were inappropriate and that Garrett "stalked" Plaintiff and his wife during lunch breaks for a period of six months. (Doc. 28 at 11).

During this series of events between Plaintiff and Garrett, Plaintiff was asked by Isaac Williams if he would like to be transferred to a different department, but Plaintiff declined. (Doc. 25 at 9). Plaintiff received no formal discipline during his employment with the Grounds Department. (Doc. 25 at 9). His resignation was received on October 19, 2021. (Doc. 25 at 9). Before that, Plaintiff reported his concerns about Garrett to the University's Office for Access and Equity ("OAE") in May 2021, stating that he believed Garrett was harassing him based on his perception that Plaintiff is disabled. (Doc. 25 at 8). A formal investigation followed: the OAE interviewed Plaintiff, Plaintiff's aunt, Plaintiff's wife, Isaac Williams, Garrett, and other coworkers. (Doc. 25 at 8). The final report found that Garrett did not engage in discrimination, harassment, or retaliation based upon a perceived disability. (Doc. 25 at 9). Plaintiff and his legal counsel did not appeal the final determination; instead, this lawsuit was filed alleging one count of hostile work environment in violation of the ADA. (Docs. 1, 25 at 9). Defendant moves for summary judgment. (Doc. 25).

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322). The non-moving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff's sole count alleges that he was subjected to a hostile work environment at the University on the basis of a perceived disability. (Doc. 1). Defendant argues it is entitled to summary judgment on this hostile work environment claim because there is no evidence that "any of the alleged harassment was based on Plaintiff being 'regarded as' disabled," the alleged "conduct was not so severe or pervasive as to alter the conditions of Plaintiff's employment," and there is no basis for employer liability. (Doc. 25).

In opposing summary judgment, Plaintiff's Response falls outside of what is required pursuant to the District's Local Rules in that Plaintiff fails to indicate which disputed facts are material. *See* Local Rule 7.1(D)(2) ("In separate subsections state the following . . . Undisputed Material facts . . . Disputed Material Facts . . . Disputed Immaterial Facts . . . [and] Undisputed Immaterial Facts."). Within the Seventh Circuit, district courts are entitled to strictly, but reasonably, enforce local rules. *See Igasaki v. Illinois Dep't of Fin. and Prof. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021). The non-movant bears the burden of establishing that there is a genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Many of Plaintiff's responsive statements do not

provide a sufficient basis for disputing the asserted facts, either by making wholly inapposite arguments, or by labeling certain assertions as "misstatements." (*See* doc. 28 at 7–9) (disputing Facts 16, 21, and 22 for irrelevant reasons or failing to address what the assertion actually said). Where the non-movant "has failed to respond in the form required," this Court may "strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). Defendant's Facts 16, 21, and 22 are therefore deemed admitted; the remaining disputed facts will be addressed.

Turning to the merits of the issue, in general, "[h]ostile work environment claims are cognizable under the ADA." *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851 (7th Cir. 2019). This type of claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Id.* (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). To survive summary judgment on this claim, Plaintiff must produce evidence that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his disability; (3) the harassment was so severe or pervasive, both subjectively and objectively, so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Id.* at 856; *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022).

I. **Whether Plaintiff can establish that he was harassed based on a perceived disability**

In his Complaint, Plaintiff brings a claim of hostile work environment based on the alleged conduct of his supervisor, Garrett, who Plaintiff believes harassed him

7

because Garrett thought Plaintiff suffered from a mental health disability, most likely being paranoid schizophrenia. (Doc. 1). However, because Plaintiff does not have a disability, he must proceed on a hostile work environment claim by first establishing that he was regarded as, or perceived as, disabled. *See* 42 U.S.C. § 12102(1) (defining "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). In other words, there are two main considerations under this disputed element: whether Plaintiff was "regarded as" disabled, and whether he was harassed based on this perception of a disability. (*See* doc. 28 at 13) ("Plotner contends that his former supervisor created a hostile work environment because he perceived that Plotner was disabled.").

Defendant argues that Plaintiff has not met his burden of establishing that Garrett perceived Plaintiff as having a disability, as Plaintiff cites to only one occurrence as supporting evidence. (Doc. 25 at 12). Both parties agree that on April 21, 2021, Garrett spoke with Plaintiff about his recent behaviors, and during that conversation, Garrett mentioned the term "paranoid schizophrenic." (Docs. 25 at 6–7, 28 at 4–5). It is undisputed that this was the only time Garrett and Plaintiff had a conversation that mentioned schizophrenia. (Docs. 25 at 7, 28 at 4–5). What was said during this conversation is disputed by the parties—Plaintiff puts forth that Garrett referred to Plaintiff as a "paranoid schizophrenic," yet Defendant contends that Garrett offered his family experiences with that disorder in a way to show support

8

for Plaintiff after observing erratic behaviors. (*Compare* doc. 25 at 6, *with* doc. 28 at 8). In more detail, there are two factual assertions by Defendant that are disputed by Plaintiff and material to the resolution of the issue presented—one of which is Fact Number 23, which states:

> 23. Approximately one to two days after this conversation, Plaintiff told Garrett he was upset about being called a paranoid schizophrenic. Plotner Dep. 54:8–17. Garrett denies calling Plaintiff a paranoid schizophrenic but confirms paranoid schizophrenia was mentioned in the conversation. Garrett Dep. 14:21-24.
>
> RESPONSE: Plotner claims that Garrett specifically called him a paranoid schizophrenic. *See* response to paragraph 20.

(Doc. 28 at 8–9) (disputing both Facts 20 and 23).

In terms of responsive argument, Plaintiff puts forth that a reasonable jury could conclude that Garrett took these actions "in an attempt to exploit what he perceived to be [Plaintiff's] disability" because Garrett "specifically called him a 'paranoid schizophrenic.'" (Doc. 28 at 16). Without citing legal authority to rebut Defendant's argument, or even pointing out that there is a disputed fact possibly material to this inquiry, Plaintiff dismisses Defendant's argument under this element of a hostile work environment claim. This type of response is superficial and borders on abandonment. *See, e.g., United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Independent of Plaintiff's oversight, the Court cannot say that there is no genuine dispute as to a material fact related to whether Plaintiff was "regarded as" disabled by Garrett.

This is because on April 21, 2021, and in the days before, Garrett expressed to his supervisor that Plaintiff was displaying erratic behaviors, and later provided Plaintiff with information on mental health resources at the University. (Doc. 25 at 6–7). Garrett testified that Plaintiff "had repeatedly been over concerned about what I was doing, where I had come from, asking me why I was walking" and documented that Plaintiff "almost seems paranoid" and anxious around the time of the conversation. (Docs. 25-2 at 5, 25-6). This testimony, and the material dispute as to what was actually said during that conversation, prevent this Court from finding that as a matter of law, Defendant is entitled to summary judgment on the issue of whether Garrett perceived Plaintiff as disabled.

However, this finding does not end the analysis, as "[s]urviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating" each element. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). An independent ground that Defendant offers for summary judgment is that even if Plaintiff was regarded as disabled, there is no evidence to support that any harassment was based on such perceived disability. (Doc. 25 at 13–15). Defendant is correct—using the term "paranoid schizophrenic" once does not automatically serve to suffuse each of Garrett's actions with discriminatory bias. A review of the evidence reveals that no other incident has been shown to be sufficiently connected to this perceived disability.

Viewing the evidence in the light most favorable to Plaintiff, he complains of: (a) one of two oil caps on his mower being removed by Garrett as an act of sabotage;

10

(b) seeing Garrett regularly while on a break; (c) being assigned to mow an area that Garrett had sprayed with lawn treatment; (d) Plaintiff's aunt being followed by University police after seeing Garrett; (e) Garrett redirecting Plaintiff to use a shovel after Plaintiff asked how to operate a tractor to remove snow; (f) Garrett's inappropriate response to Plaintiff's question of what his job duties were; and (g) Garrett moving Plaintiff to a different location. (Docs. 1, 28 at 10–12). As stated, Plaintiff argues that these incidents of harassment are related to Garrett's perception of his disability solely because of the conversation in April 2021. (Doc. 28 at 16).

Plainly, Plaintiff has failed to introduce any evidence that these incidents constituted harassment on the basis of a perceived disability. He disputes Defendant's factual statements related to Plaintiff having "no reason to believe" these incidents occurred "because Garrett perceived Plaintiff to be disabled;" however, he fails to point to any evidence to build this connection. (*See* doc. 28 at 7–9) (disputing Facts 11, 15, and 27). For instance, Plaintiff provided the following response to this factual statement:

> 27. Plaintiff believes Garrett called the University of Illinois Police Department ("UIPD") on his aunt. Plotner Dep. 41:12. Plaintiff has no reason to believe this was because Garrett perceived Plaintiff to be disabled. Plotner Dep. 46:8.
>
> RESPONSE: This misstates Plotner's testimony. Plotner claimed that he felt as though Garrett was doing this to intimidate him. Doc. 25-1, Plotner dep. at 46:4-9.

(Doc. 28 at 9). During the deposition, Plaintiff was asked: "[W]ith respect to the police incident, do you have any reason to believe that [Garrett] called UIPD to have your aunt followed because he perceived you to be disabled?" Plaintiff testified "No. I think

11

he was—I don't know. I think he was trying to intimidate." (Doc. 25-1 at 13). This type of response may attempt to bridge the gap of whether Garrett actually called the police, but it does not go to whether Garrett called the police because he perceived Plaintiff as disabled and was discriminating against him on this basis. This dispute, even if it was properly made, is immaterial to the issue.

In disputing Fact 11, which states "[a]part from Plaintiff's belief, there is no evidence that Garrett sabotaged Plaintiff's mower," Plaintiff responded as follows:

> This isn't entirely correct. Garrett's actions were consistent with the way that he treated Plotner. Further, when Plotner complained about it Garrett didn't deny doing it. Rather Garrett stated, "Well, sometimes guys play tricks on each other. It's just how it is." Isaac Williams rejected that and called it "sabotage." The mechanic also called it sabotage. Again, Garrett didn't deny doing it. Doc. 25-1, Plotner dep. at 27:23-28:14. A jury could look at the totality of these circumstances and conclude that it was Garrett who sabotaged his mower. Doc. 25-1, Plotner dep. at 23-24.

(Doc. 28 at 7). Not only did Plaintiff fail to support this dispute by citing evidence in the record related to the statements by the mechanic and Williams, but this dispute is also not material to whether Garrett "sabotaged him" because he regarded Plaintiff as disabled. Plaintiff fails to reconcile how this "sabotage" is somehow related to Garrett calling Plaintiff a paranoid schizophrenic, especially considering that the oil-cap incident occurred about a year before the April 2021 conversation. Any dispute related to the oil-cap incident is immaterial to the issue of whether Plaintiff was harassed on the basis of a perceived disability.

The last disputed factual statement is related to Garrett "stalking" Plaintiff on his breaks. It is as follows:

12

> 15. There is no evidence that Garrett followed Plaintiff on his unpaid time because he perceived Plaintiff to be disabled. Plotner Dep. 39:8.
>
> RESPONSE: Again, this incompletely summarizes Plotner's testimony. Plotner explained the repeated instances where Garrett followed him around on his unpaid time. Plotner further explained that Garrett didn't do this to other employees under his supervision. Doc. 25-1, Plotner dep. at 34.

(Doc. 28 at 7). This type of response is extraneous in that it does not actually dispute what Defendant stated. Because Plaintiff has not pointed to any evidence to sufficiently connect the alleged stalking to Garrett's perception of Plaintiff's disability, this fact is admitted. *See Samuels v. Schneider Nat'l Carriers*, No. 15 C 8468, 2018 WL 4590329, at *1 n.1 (N.D. Ill. Sept. 25, 2018) ("When parties populate their submissions with objections and arguments rather than with 'concise' factual statements and clear citations to competent evidence, they subvert the rule's essential purpose."). It is relevant that Plaintiff took most his breaks within the zone that Garrett was responsible for supervising, and it was Garrett's job to monitor the progress of the employees within his zone. (*See* doc. 28 at 4) (accepting Facts 12 and 13 as undisputed). Plaintiff has not introduced any evidence that Garrett's supervision was outside the scope of what his job duties dictated. Without a proper reason for dispute, this fact is deemed admitted.

The other incidents suffer the same fate in that they do not establish that Garrett committed these actions because he was harassing Plaintiff on the basis of a perceived disability. Plaintiff offers no evidence demonstrating that Garrett purposefully sprayed lawn treatment on an area that Plaintiff was assigned to mow, let alone that Garrett did so because of a perceived disability. If anything, this reveals

13

an oversight or miscommunication, especially in light of the fact that Plaintiff was not subject to any discipline for the resulting tire marks. Other actions or comments made by Garrett, related to snow removal, Plaintiff's job duties, or moving Plaintiff to a different work area, are not sufficiently connected to a perceived mental health disability. Plaintiff points only to his own belief that Garrett was taking these actions because of a perceived disability—but the "subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact." *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841 (7th Cir. 1996). It is important to remember that "the existence of an unpleasant work environment, without more, does not mean that Plaintiff was subjected to a hostile work environment based on [his] alleged disability. *Brunat v. Whitley*, No. 20CV04017, 2021 WL 1199022, *9 (C.D. Ill. Mar. 30, 2021).

Plaintiff provides no evidence that would allow this Court to infer the complained-of incidents were related to Garrett's perception of Plaintiff's mental health disability. Therefore, Defendant is entitled to summary judgment.

## II.    Whether the alleged conduct was severe or pervasive

Regardless of what motivated Garrett to engage in these actions, the incidents are not sufficiently "severe or pervasive" or "objectively offensive" to constitute a hostile work environment. In other words, even if this Court found that the incidents were related to Plaintiff's perceived disability, the remaining elements are not met. "A hostile work environment is based on the totality of the circumstances," considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021) (internal quotes and citation omitted). A workplace rises to the level of an objectively hostile work environment only if it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ford*, 942 F.3d at 851 (internal quotation marks and citation omitted).

Defendant contends that summary judgment is appropriate because any alleged harassment was not severe or pervasive. (Doc. 25 at 15–19). Plaintiff's responsive argument makes a few different points. First, Plaintiff argues that the Court must "holistically" consider the harassment and avoid "picking and choosing isolated incidents." (Doc. 28 at 14). Plaintiff cites to Garrett sabotaging his equipment and showing up repeatedly while Plaintiff was on a break—both things that Plaintiff contends could show that Garrett was "exploiting his vulnerability." (Doc. 28 at 15). However, the conduct that Plaintiff complains of has been found not to be sufficient to state a hostile work environment claim. For example, the Seventh Circuit noted that "having supervisors who are short tempered, hostile, unfairly critical, and disrespectful, does not amount to objectively offensive, severe, or pervasive conduct." *Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023*).* And being "subjected to excessive monitoring" by a supervisor is not "objectively offensive" conduct. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). "[E]mployers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries

15

that are, unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). Even considering the harassment "holistically," Plaintiff fails to establish that Garrett's conduct was severe or pervasive, as any incident does not go beyond what has already been categorized as mere unpleasantries.

Second, Plaintiff contends that the term "paranoid schizophrenic" is objectively hostile, likening the use to racially offensive slurs. (Doc. 28 at 15). To analyze this type of argument, the Court must consider both the pervasiveness and severity of the language used, which are inversely related. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (explaining how there is no "magic number" of instances or type of slurs required to prove a hostile work environment). Neither factor leans in Plaintiff's favor. The term "paranoid schizophrenic" is a medical diagnosis—it is not in the same category as racial slurs or epithets—and even if the Court did consider it a "severe" word, Garrett only used this term once. This argument does not persuade the Court that the harassment Plaintiff faced could support a hostile work environment claim.

The analysis in *Brunat v. Whitley*, No. 20CV04017, 2021 WL 1199022 (C.D. Ill. Mar. 30, 2021), is relevant. There, the court granted summary judgment for the defendant where the plaintiff could only point to one incident where her employer may have inferred she had a mental health disability. *Id.* at *8. That one incident was the placement of a mental health awareness document on her desk—even if the court assumed her manager was responsible for giving the plaintiff this document, it was "a single, isolated incident" that did "not rise to the level of conduct" necessary

16

to establish a hostile work environment. *Id.* (citing *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012). The same is true here—even if the Court assumed Garrett called Plaintiff a "paranoid schizophrenic" in a derogatory manner, it is no more than a single, offhand comment. *See also Forman v. City of Middleton*, No. 20-CV-516, 2021 WL 5038752, at *6 (W.D. Wis. Oct. 29, 2021) (finding plaintiff did not meet standards to bring hostile work environment claim when his employer accused him of making excuses related to his depression and use of protected leave).

Simply put, no reasonable jury could find that Garrett's conduct was objectively offensive, or so severe or pervasive, that it altered his working conditions and created an abusive environment. Because the Court finds that Plaintiff failed to establish that his supervisor harassed him based on a perception of disability, and that the conduct could support a hostile work environment claim, summary judgment is appropriate for Defendant and the issue of employer liability need not be decided.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (doc. 25) is GRANTED. As all matters have been disposed of, this case is TERMINATED.

SO ORDERED.

Entered this 10th day of February 2025.

                                                          s/ Joe B. McDade
                                                          JOE BILLY McDADE
                                                     United States Senior District Judge